UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL INDICTMENT: |
| v. | ) | |
| | ) | 1:21-CR-231 (TCB) |
| JAMES SINNOTT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT SINNOTT'S TRIAL BRIEF

There are four issues the defense will address in this trial brief:

(1) The government's incorrect argument that the *mens rea* for a tax evasion prosecution as explained in *Cheek*, is analogous to the *mens rea* in prosecutions for other crimes for which the government must prove willfulness as defined in *Bryan*.

(2) The requirement that the government prove both authentication, and admissibility for documentary evidence.

(3) The prerequisites for admitting summaries of evidence, allowing summaries to go out with the jury during deliberations, and whether demonstrative aids that are not properly admitted as summaries may be provided to the jury during the deliberations.

(4) Whether the entire indictment should be provided to the jury during the deliberations.

**1. *Cheek* vs. *Bryan*.**

The government succinctly describes the holding in *Cheek v. United States,*

498 U.S. 192, 111 S. Ct. 604 (1991) (the specific intent interpretation of "willfully"

in the federal tax statutes is appropriate largely due to the complexity of the tax laws). The Supreme Court held that in tax prosecutions the government must prove beyond a reasonable doubt that the defendant was aware of *the* law that he allegedly violated. It is not enough to prove that the defendant had a general awareness of the unlawfulness of his conduct; the government must prove that the defendant's *mens rea* focused on the exact law that was violated.

After *Cheek* was decided, only one other criminal law has been elevated to the status of *Cheek* in terms of the required *mens rea*: *Ratzlaf v. United States,* 510 U.S. 135, 114 S. Ct. 655 (1994), a decision that was rendered obsolete when Congress jettisoned the "willfulness" element of the CTR structuring law.

*Bryan v. United States*, 524 U.S. 184, 118 S. Ct. 1939 (1998), decided seven years after *Cheek* and four years after *Ratzlaf*, retreated from those decisions in a case involving a firearm licensing violation. Justice Stevens acknowledged the decisions in *Cheek* and *Ratlzlaf*, but expressly limited their holdings to the specific crimes they addressed: tax evasion and structuring currency transactions. Instead of adopting the *Cheek* standard for all crimes that require proof of willfulness, the *Bryan* decision retreated to the more common definition of willfulness:

> A person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law. Now, the person need not be aware of the specific law or rule that his conduct may be violating. But he must act with the intent to do something that the law forbids.

*Id.* at 190.

And that is now the status of the law for most crimes.  But not tax crimes. For tax cases, a heightened level of *mens rea* is necessary: proof that the defendant *is* aware of the specific rule or law that his conduct may be violating. For other crimes, the *Bryan* standard applies: the defendant must be aware generally of the unlawfulness of his conduct but need not be shown to be aware of the specific rule or law that he is violating.

In the government's trial brief, there is a subtle merging of these distinct principles, almost as if to suggest that *Bryan* ameliorated the holding in *Cheek*. Though introducing the holding in *Bryan* with the signal "cf," the government does not clearly recognize that *Bryan* should really be signaled with a "contrast" signal, or perhaps "But see."  *Bryan* is decidedly *not* the standard in this case. Govt Trial Brief, Docket Entry 532, pp. 15-16.  Even a quick reading of *Bryan* reveals that the Court unequivocally reaffirmed that *Cheek* stands for the proposition that "ignorance of the law *is* a defense" and in tax cases, the newly-minted *Bryan* standard does not apply:

> In certain cases involving willful violations of the tax laws, we have concluded that the jury must find that the defendant was aware of the specific provision of the tax code that he was charged with violating. See, *e.g., Cheek v. United States,* 498 U.S. 192, 201, 111 S. Ct. 604, 610, 112 L. Ed. 2d 617 (1991).  Similarly, in order to satisfy a willful violation in *Ratzlaf,* we concluded that the jury had to find that the defendant knew that his structuring of cash transactions to avoid a reporting requirement was unlawful. *See* 510 U.S., at 138, 149, 114 S.

Ct., at 657–658, 663. Those cases, however, are readily distinguishable. Both the tax cases and *Ratzlaf* involved highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct. As a result, we held that these statutes "carv[e] out an exception to the traditional rule" that ignorance of the law is no excuse and require that the defendant have knowledge of the law. The danger of convicting individuals engaged in apparently innocent activity that motivated our decisions in the tax cases and *Ratzlaf* is not present here because the jury found that this petitioner knew that his conduct                                was                                unlawful.

*Bryan,* 118 S. Ct. at 1946–47, 524 U.S. at 194–95 (omitting footnotes).

Earlier this year, in case there was any doubt that *Bryan* recognized that *Cheek* governs the *mens rea* standard in tax cases, the Second Circuit provided a brief tutorial:

> "The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek*, 498 U.S. at 199, 111 S. Ct. 604. That said, any number of crimes—including the FECA violations at issue here—require that a defendant "knowingly and willfully" violated the law. In *Bryan v. United States*, the Supreme Court held that "when used in the criminal context, a willful act is one undertaken with a bad purpose. In other words, in order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." 524 U.S. 184, 191-92, 118 S. Ct. 1939, 141 L. Ed. 2d 197 (1998) (internal footnote and quotation marks omitted).

> The defendant in *Bryan* challenged his conviction for selling firearms without a federal license. *Id.* at 189, 118 S. Ct. 1939. The offense at issue required the government prove Bryan acted willfully. *Id.* at 188-89, 118 S. Ct. 1939. Bryan argued that as he was unaware of the specific federal licensing requirements at issue, his actions did not satisfy the willfulness element. *Id.* at 189-90, 118 S. Ct. 1939. The Supreme Court rejected that argument, holding that a statute with a "willfulness" requirement does not require the government to prove a defendant acted with a specific intent to commit a particular crime,

because "knowledge that the conduct is unlawful is all that is required." *Id.* at 196, 118 S. Ct. 1939. While *Bryan* involved a federal firearms conviction, "this court has recognized that its definition of willfulness is generally applicable." *United States v. Kosinski*, 976 F.3d 135, 154 (2d Cir. 2020).

There are two notable exceptions to this general rule. The Supreme Court held that "in certain cases involving willful violations of the tax laws ... the jury must find that the defendant was aware of the specific provision of the tax code that he was charged with violating." *Bryan*, 524 U.S. at 194, 118 S. Ct. 1939 (citing *Cheek,* 498 U.S. at 201, 111 S. Ct. 604). And in *Ratzlaf v. United States*, a currency structuring case, the Court "concluded that the jury had to find that the defendant knew that his structuring of cash transactions to avoid a reporting requirement was unlawful." *Id.* (citing 510 U.S. 135, 138, 114 S. Ct. 655, 126 L.Ed.2d 615 (1994)). The Court distinguished *Cheeks* and *Ratzlaf* from the firearms violations in *Bryan*, noting that both cases involved "highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct." *Id.* But "[t]he danger of convicting individuals engaged in apparently innocent activity that motivated our decisions in the tax cases and *Ratzlaf* [was] not present [in *Bryan*] because the jury found that this petitioner knew that his conduct was unlawful." *Id.* at 195, 118 S. Ct. 1939. Thus, a statute's willfulness requirement does not require the government to prove specific intent unless the statute is highly specialized and complex and implicates seemingly innocent conduct.

*Bryan* makes clear that *Cheek* and *Ratzlaf* are the exception, not the rule.

*United States v. Kukushkin*, 61 F.4th 327, 332–33 (2d Cir. 2023).

The Government's citation to *United States v. Kerley* 643 F.2d 299, 303 (5th Cir. 1981), for the proposition that the government is not required to prove the defendant acted in bad faith, or with an evil motive or intent (D.E. at 7), is also misleading. *Kerley* addressed the "willfulness" requirement in a criminal civil rights

violation (18 USC § 242). *Kerley* held that the willfulness requirement in a § 242 case *does* require proof that the defendant acted with bad faith and with an evil motive and reversed the defendant's conviction based on the trial court's improper jury instruction. *Kerley*, authored by Judge Frank Johnson, explained that civil rights violations require proof of a more egregious *mens rea* standard than tax cases. *Kerley* cited *United States v. Pomponio*, 429 U.S. 10 (1976), a short *per curiam* decision that predated the *Cheek* decision by fifteen years.  In *Cheek*, as explained above, the Court held that a defendant's good faith belief – <u>even if irrational</u> – is a valid defense. While we can quibble whether the government is required to "prove bad faith" as opposed to being required to "disprove good faith," the bottom line is that the government is required to prove that the defendant's "willfulness" means that his "ignorance of the law" is a defense.  The government must prove that the defendant actually *knew* the specific law he is accused of violating: not just that he *should* have known the law; not just that he is *presumed* to know the law; not just that it was objectively unreasonable to have been mistaken about the law.  He must have actually *known* the law and then intentionally made the decision to violate it.

## 2. Records are not admissible merely because they are authentic or because they are business records.

The parties are currently working through issues relating to authentication, admissibility, and the certification provision in Rule 902(11). The rules regarding business records are not difficult to articulate. Federal Rules of Evidence 803(6).  A

business record provides an exception to the hearsay rules if it satisfies the basic

prerequisites of the rule:

> **(A)** the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> **(C)** making the record was a regular practice of that activity;
> **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> **(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

*United States v. Massey,* 89 F.3d 1433 (11th Cir. 1996).

Some of the records offered by the government were obtained via subpoena

from Inland Capital Management (ICM), which is operated by Jack Fisher. Thus the

records were "kept" in the business, i.e., in the computer systems of the company

that contained every email, correspondence, and junk mail that was ever received by

the company's servers. The records, therefore, were "kept" in the ordinary course of

business. But were they created in the ordinary course of business? Were they

authored by anybody ever employed by the business?  Were they authored by some

person who "made the record" at or near the time the information was submitted to

the business? Was the record made as part of the regular practice of the business

activity?

These are separate requirements, each of which must be satisfied in order to

invoke Rule 803(6).  Moreover, Rule 902(11) does not alter the requirement of Rule

803(6), it simply provides a method of proving the existence of the prerequisites without in any way modifying those prerequisites.

There are, to be sure, other exceptions to the hearsay rules which may apply to obviate the need for any showing of the business record exception prerequisites. For example, if there is a document in the company's computer system authored by Jack Fisher, the document may be admissible as the statement of a party opponent, or a co-conspirator hearsay statement (assuming the statement was in furtherance of the alleged conspiracy).

If the parties are unable to reach agreement on any exhibit, the court will be alerted as soon as possible. The parties are operating under the following protocol: No later than 36 hours before a witness is called, the proponent will provide the identity of all witnesses to be called, as well as the exhibits that will be offered during those witnesses' testimony. The opponent will respond with any specific objections to any exhibit no later than 12 hours prior to the testimony of the witness. Thus, the proponent will provide a witness list and exhibit list for the witnesses who will be called on Tuesday, not later than Sunday evening and all objections to the exhibits will be provided to the proponent on Monday evening.

If an objection cannot be resolved and may require more than a short argument, the parties will alert the court prior to court convening so the matter can be taken up in court prior to the jury's arrival, or during a break.

3. **Summaries of the evidence may go back with the jury during deliberations; Demonstrative exhibits do not.**

    a. <u>A Rule 1006 Summary must be a summary of the evidence already admitted, and not a demonstrative exhibit.</u>

The decision to admit summary charts and exhibits is within the discretion of the trial court. *United States v. Richardson,* 233 F.3d 1285 (11th Cir. 2000); *United States v. Harmas,* 974 F.2d 1262 (11th Cir. 1992). Evidence summaries must be supported by evidence previously presented to the jury *before* they may be admitted. *United States v. Naranjo,* 634 F.3d 1198 (11th Cir. 2011); *United States v. Scrima,* 819 F.2d 996 (11th Cir. 1987). Summary charts, moreover, should be used with caution due to their potential for abuse; the trial judge must ensure a defendant is not convicted in a trial by charts. *Richardson,* 233 F.3d at 1293. *See United States v. Conlin*, 551 F.2d 534, 538–39 (2d Cir. 1977) (*citing Steele v. United States,* 222 F.2d 628, 630 (5th Cir. 1955), *cert. denied,* 355 U.S. 828 (1957)) ("A chart submitted by the prosecution is a very persuasive and powerful tool and must be fairly used, since, by its arrangement and use, it is an argument to the jury during the course of the trial . . . A chart which for any reason presents an unfair picture can be a potent weapon for harm and permitting the jury to consider it is error." Where the summary chart is not based on competent evidence, the chart is more likely to confuse or mislead the jury than it is to assist it. *See* Fed. R. Evid. 403; *United States v. Citron,* 783 F.2d 307, 316 (2d Cir. 1986)).

The government has provided to the defense scores of charts and summaries. It is not clear to the defense which of these charts the government intends to introduce as summaries pursuant to FRE 1006, and which are to be used as demonstrative exhibits during a witness's testimony. Summaries are admissible evidence that must be based on other admissible evidence – generally voluminous records of transactions. Summaries are not simply a review of a witness's testimony, or a list of the marquee highlights of the testimony of a witness.

**b.** <u>A demonstrative exhibit that is not a summary of admissible evidence does not go back to the jury during deliberations.</u>

The Fifth Circuit, citing Judge Weinstein's treatise on the law of evidence, explains the difference between a summary exhibit (which is admissible as an item of evidence and which can be provided to the jury during deliberations) and a pedagogical device, often referred to as a demonstrative aid during the testimony of a witness:

> When considering the admissibility of exhibits of this nature, it is critical to distinguish between charts or summaries *as evidence* and charts or summaries *as pedagogical devices.* 5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 1006[07] (1983). Rule 1006, Fed. R. Evid., provides that the contents of voluminous records "may be presented in the form of a chart, summary, or calculation." A chart admitted pursuant to Rule 1006 is itself evidence and should go to the jury room during deliberations along with the other exhibits. Of course, the rule provides protections against abuse: "The originals, or duplicates, [of the records summarized in the chart] shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court."

A trial court also has the discretion to permit the parties to show to the jury charts and other visual aids that summarize or organize testimony or documents that have already been admitted in evidence. Charts of this nature are not themselves evidence and, absent the consent of all parties, they should not be sent to the jury room with the other exhibits. *Weinstein's Evidence* at ¶ 1006[07]. Our cases have not always made this distinction clear. We have made clear, however, that a district court does not err in informing the jury that pedagogical charts are *not* evidence or in refusing to send them to the jury room. *See, e.g., United States v. Evans,* 572 F.2d 455, 492 (5th Cir. 1978), *cert. denied,* 439 U.S. 870, 99 S. Ct. 200, 58 L.Ed.2d 182 (1979); *United States v. Smyth,* 556 F.2d 1179, 1184 n. 11 (5th Cir.), *cert. denied,* 434 U.S. 862, 98 S. Ct. 190, 54 L.Ed.2d 135 (1977).

Exhibit 30 is clearly a pedagogical device which merely summarizes and organizes data already in evidence. The number of winches sold during 1978 was in evidence through George Pierce's testimony. The equation which was added to exhibit 30 is simply a summary of Entwistle's testimony. The figures used in the equation were also in evidence from other sources: George Pierce testified that Pierce Sales sold 1,624 winches in 1978; Pierce Sales' tax return reveals that Pierce Sales realized a net profit in 1978 of $5,203. We discern no error, therefore, in refusing to admit exhibit 30 into evidence. The district court had the discretion to permit its use before the jury; the court was not obligated, however, to allow it into evidence.

*Pierce v. Ramsey Winch Co*., 753 F.2d 416, 431 (5th Cir.1985). *See also*, *United States v. Groysman*, 766 F.3d 147, 156 (2d Cir. 2014)("More fundamentally, however, these charts were not "summary charts" as contemplated by Fed. R. Evid. 1006. Government Exhibits 59 through 65 do not summarize "voluminous writings, recordings, or photographs." *Id*. Instead they appear to be pictorial representations of hearsay testimony offered through Agent Ginzburg and of events and transactions later described by the two cooperators. As such, the

exhibits are no more admissible than any other extrinsic writing memorializing the substance of a witness's testimony"); *United States v. Irvin*, 682 F.3d 1254 (10th Cir. 2011) (in this mortgage fraud case, the Tenth Circuit held that it was reversible error to allow the government to introduce a chart that purportedly summarized several boxes of "loan files").

**4.  <u>The indictment should not go back with the jury during deliberations.</u>**

Though the trial court has the discretion to provide the entire indictment to the jury during its deliberations, in this case, the court should decline to do so for several reasons. First, the indictment contains voluminous amounts of information relating to Smith, Roberts, and Lewis that will not be admitted at trial and will need to be redacted.  Second, the indictment includes sections that purport to explain the law, some of which is accurate, some of which is not.  Again, redactions will be necessary to eliminate those portions. Third, the indictment provides a blueprint of the government's case—a luxury that the defense does not have, because it was not provided an opportunity to submit a 100-page Not Guilty plea at the arraignment. The indictment's function is to provide to the defense information that will be necessary to prepare a defense; it is not designed to provide the jury with a roadmap for a conviction.

While this is a decision that the court will not need to make for several weeks, the defense will be objecting to providing the indictment to the jury during its

deliberations. A short document that is incorporated into the verdict form is sufficient to remind the jury what each count alleges, without summarizing all the evidence that was (and the evidence that was not) admitted.

This, 9th day of July, 2023.

RESPECTFULLY SUBMITTED,

GARLAND, SAMUEL & LOEB, P.C.

/s/ *Donald F. Samuel*
DONALD F. SAMUEL, ESQ.
Georgia Bar Number 624475

/s/ *Amanda R. Clark Palmer*
AMANDA R. CLARK PALMER, ESQ.
Georgia Bar Number 130608

/s/ *Kristen W. Novay*
KRISTEN W. NOVAY, ESQ.
Georgia Bar Number 742762

Attorneys for Defendant James Sinnott

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
Tel.: 404-262-2225
Fax: 404-365-5041
Email:   dfs@gsllaw.com
         aclark@gsllaw.com
         kwn@gsllaw.com

UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL INDICTMENT: |
| v. | ) | |
| | ) | 1:21-CR-231 (TCB) |
| JAMES SINNOTT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE AND COMPLIANCE

The undersigned attorney hereby certifies that the foregoing document, which was prepared using Times New Roman, 14-point font, was filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

This, 9th day of July, 2023.

RESPECTFULLY SUBMITTED,

GARLAND, SAMUEL & LOEB, P.C.

/s/ *Donald F. Samuel*
DONALD F. SAMUEL, ESQ.
Georgia Bar Number 624475

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
Tel.: 404-262-2225
Fax: 404-365-5041
Email:    dfs@gsllaw.com

14