## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CASE NO.: |
| | 1:21-CR-00231-TCB-CMS-6 |
| CLAY MICHAEL WEIBEL A/K/A "CLAYTON WEIBEL," | |
| Defendant. | |

## <u>MOTION FOR MISTRIAL</u>

Defendant Clay Michael Weibel respectfully moves the Court for a mistrial on the following grounds: (1) admission of opinion testimony elicited from Walter "Terry" Roberts in violation of Rules 602, 702, and 701 of the Federal Rules of Evidence; (2) severely limiting the scope of the cross-examination of a witness against Mr. Weibel in violation of the Federal Rule of Evidence 611(b) and the Confrontation Clause of the Sixth Amendment; and (3) interrupting the cross-examination of another witness against Mr. Weibel and proceeding to ask leading questions from the bench in violation of Federal Rule of Evidence 611(c), thereby denying Mr. Weibel a fair trial.

Mr. Roberts's testimony was admitted in violation of the Federal Rules of Evidence and, if not addressed, could require reversal of any conviction of Mr. Weibel. Specifically, on July 21, 2023, over Mr. Weibel's objection, the Court

allowed the government to conclude its examination of convicted appraiser Mr. Roberts with a dramatic, inadmissible, and highly prejudicial question: whether in Mr. Roberts's opinion, based on his "experience with Mr. Fisher and Mr. Sinnott" – not with Mr. Weibel – four lengthy appraisals that Mr. Roberts did not prepare or review contemporaneously "could stand on their own."  By Mr. Roberts's own account, he had not completed appraisal work on the properties to form his own opinion of value.  The government offered this testimony as a backdoor effort to impugn Mr. Weibel's appraisals without calling an eyewitness or an expert who actually read the appraisals and reached an independent opinion about them.

The testimony was inadmissible on several levels.  First, there was no foundation for Mr. Roberts's opinion.  He did not read Mr. Weibel's appraisals or complete his own appraisal work on the properties in question.[1]  Second, Mr. Roberts was not qualified to offer an expert opinion, and the government failed to provide notice that he would offer an expert opinion.[2]  Third, Mr. Roberts's lay opinion about

---

[1] While Mr. Roberts testified that he visited some of the properties (Trial Tr. Vol. 6 P.M., 41:20–42:15) and that he had access to working files regarding the properties (Trial Tr. Vol. 6 P.M., 50:14–18), he also testified that he never completed appraisals on the properties (Trial Tr. Vol. 6 P.M., 50:11–13), which falls well short of the information required to offer an expert opinion as to the value of a piece of land.

[2] Mr. Weibel noted his objection early in Mr. Roberts's testimony and again at the time of the inadmissible questioning.  ("Objection, Your Honor.  This witness is not an expert."  Trial Tr. Vol. 5, 87:25 – 88:01.)  Early in Mr. Roberts's testimony, when asked if "this witness [Mr. Roberts was] going to be asked to opine on Mr. Weibel's

Mr. Weibel's appraisals is irrelevant.  Fourth, the undue prejudice to Mr. Weibel from the theatrical conclusion to Mr. Roberts's testimony outweighs any possible probative value, in violation of Rule 403.

Further, on August 8, 2023, the Court, on its own, and in the absence of an objection from the government, severely limited the cross-examination of a government witness against Mr. Weibel, ostensibly for straying beyond the scope of the direct examination.  In doing so, however, the Court disregarded the plain text of Rule 611(b) of the Federal Rules of Evidence, which unambiguously allows cross-examination into all "matters affecting the witness's credibility," regardless of the scope of the direct examination, as well as the Sixth Amendment's Confrontation Clause, which "commands . . . that reliability [of a witness against the accused] be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 61 (2004).

Finally, on August 14, 2023, the Court, again on its own, and in the absence of an objection from the government, interrupted the cross-examination of another

---

appraisal" the government assured the Court that Mr. Roberts was "only going to be asked about the appraisals for which *he completed* work for Mr. Fisher."  Trial Tr. Vol. 6 A.M., 104:13–16 (emphasis added).  Mr. Weibel explained his objection that Mr. Roberts was "a fact witness, and I object to him being asked to offer any opinion testimony as to Mr. Weibel's appraisal," to which the Court declined to rule, noting that "he hasn't done that yet. Let's see."  *Id*. at 104:21–25.  At the time of the questioning, Mr. Weibel again objected that "[t]his witness is not an expert and should not opine on the appraisals," and the Court "[o]verruled."  Trial Tr. Vol. 6 P.M., 66:17–19.

witness against Mr. Weibel and proceeded to ask that witness a series of leading questions from the bench, violating Federal Rule of Evidence 611(c), which frowns on such leading questions, thus contributing to an unfair trial of Mr. Weibel.

## LEGAL STANDARD AND ARGUMENT

"'Typically, a defendant is entitled to a grant of mistrial only upon a showing of substantial prejudice,' which occurs when there is a reasonable probability that, but for the alleged error, the outcome of the trial would have been different." *United States v. Grzybowicz*, 747 F.3d 1296, 1311 (11th Cir. 2014) (quoting *United States v. Ettinger*, 344 F.3d 1149, 1161 (11th Cir. 2003)). "We have recognized that a trial judge is often 'in the best position to evaluate the prejudicial effect of a statement or evidence on the jury,' and that the prejudicial effects of an improper statement may be reduced or eliminated where 'the record contains sufficient independent evidence of guilt.'" *Grzybowicz*, 747 F.3d at 1311 (quoting *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007)). "If a district court issues a curative instruction, we will reverse only if the evidence 'is so highly prejudicial as to be incurable by the trial court's admonition.'" *United States v. Diaz*, 248 F.3d 1065, 1101 (11th Cir. 2001) (quoting *United States v. Trujillo*, 146 F.3d 838, 845 (11th Cir. 1998)). For the reasons set out above, no curative instruction can surmount the extreme prejudice to Mr. Weibel.

I.     **Admission of Mr. Roberts's Testimony Entitles Mr. Weibel to a Mistrial.**

This Court's July 21, 2023, overruling of Mr. Weibel's objection to Mr. Roberts's testimony regarding Mr. Weibel's appraisals meets these criteria for a mistrial.  The ruling here was clear error because: (1) there was no foundation for the testimony; (2) Mr. Roberts was not qualified to offer an expert opinion, and the government failed to provide notice that he would offer an expert opinion; (3) Mr. Roberts's lay opinion about Mr. Weibel's appraisals is irrelevant; and (4) Mr. Roberts's testimony is highly prejudicial to Mr. Weibel and lacks the probative value required to overcome that prejudice.

   *a. The Government Did Not Lay the Foundation to Admit Mr. Roberts's Testimony.*

The government failed to lay the proper foundation for the admission of Mr. Roberts's testimony.  Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  At the conclusion of Mr. Roberts's testimony, the government asked him a series of questions regarding appraisals he prepared on behalf of Mr. Fisher.  In concluding those questions, the government asked Mr. Roberts if his appraisals "would stand on their own." Trial Tr. Vol. 6 P.M., 65:24–66:9.  Mr. Roberts answered that they would not, thereby conveying to the jury that

his own appraisals were fraudulent.  He had no basis to opine about Mr. Weibel's appraisals.

Nonetheless, directly following his testimony about his own appraisals, and through almost identical questions, the government asked Mr. Roberts whether *Mr. Weibel's* appraisals for Sand Investment, Winnemucca, Storm Crow, Bay Creek, and Perquimans would stand on their own.  *Id*. at 66:10–25.  Over objection, Mr. Roberts responded that Mr. Weibel's appraisals would not.  But there was no foundation for that testimony.  Mr. Roberts testified that he "didn't finish appraising" or prepare an appraisal of these four properties that Mr. Weibel went on to appraise.  *Id*.  The evidence showed only that Mr. Roberts visited some of the properties (Trial Tr. Vol. 6 P.M., 42:13–15) and that he had access to a Dropbox containing working files regarding the properties (Trial Tr. Vol. 6 P.M., 50:14–61:8).

Mr. Roberts's "experience" with Mr. Fisher and Mr. Sinnott, referenced in the government's improper question, has no bearing on whether Mr. Weibel's appraisals were appropriate.  Moreover, Mr. Roberts's testimony suggests that his appraisals were not analogous to Mr. Weibel's; for example, he admitted that Mr. Weibel's appraisals and discounted cash flow analyses were more detailed and robust than his own (Trial Tr. Vol. 6 A.M.,123:14–21; Trial Tr. Vol. 6 P.M.,103:11–23).

### b. *Mr. Roberts's Opinion Testimony Violates Rule 702.*

For an appraiser to testify as an expert pursuant to Federal Rule of Evidence 702, the appraiser must be qualified as an expert and the government must provide notice to the defense in advance. *See* Fed. R. Crim. P. 16(a)(1)(G)(ii) and LCrR 16.1 (requiring disclosure of expert witness materials). The government gave notice of an expert witness under Rule 16, Charles Brigden, but has not called him. Mr. Roberts surely would not qualify as an expert witness given his felony conviction. To the extent Mr. Roberts was offering his expert opinion as an appraiser, admitting such improper testimony is a reversible error. *See*, *e.g.*, *United States v. Hawkins*, 934 F.3d 1251, 1264–65 (11th Cir. 2019) (vacating conviction for drug charges where a D.E.A. agent testifying as a lay witness for the prosecution provided opinion testimony regarding ambiguous references captured by wiretap); *United States v. Preston*, 873 F.3d 829, 836–38 (9th Cir. 2017) (reversing a conviction for aggravated sexual abuse of a child where, in part, a therapist testifying as a lay witness for the prosecution provided opinion testimony about sexual abuse generally without having first been noticed as an expert); *United States v. Williams*, 827 F.3d 1134, 1157–58 (D.C. Cir. 2016) (reversing, in part, a conviction for drug charges where the F.B.I. agent testifying as a lay witness for the prosecution provided opinion testimony regarding ambiguous references captured by wiretap); *United States v. Hampton*, 718 F.3d 978, 982–84 (D.C. Cir. 2013) (reversing a conviction for drug

charges where the F.B.I. agent testifying as a lay witness for the prosecution provided opinion testimony regarding ambiguous references captured by wiretap); *United States v. Riddle*, 103 F.3d 423, 427–29 (5th Cir. 1997) (reversing a conviction for several banking-related offenses where, in part, the prosecution's lay witness provided opinion testimony regarding proper banking practices).

In addition, the government failed to make the required disclosures under Rule 16 of the Federal Rules of Criminal Procedure before seeking to elicit an expert opinion from Mr. Roberts. *See United States v. Stahlman*, 934 F.3d 1199, 1219 (11th Cir. 2019) (explaining that under Rule 16, "[i]f the government intends to present a witness as an expert in a criminal trial, the government must disclose that witness as an expert prior to trial and provide a written summary of the expected testimony"). To allow such unnoticed expert testimony is to invite reversal on appeal. *See*, *e.g.*, *United States v. Starks*, 34 F.4th 1142, 1171–73, n.9 (10th Cir. 2022) (vacating a conviction for drug charges where the government failed to provide notice of expert testimony); *United States v. Lloyd*, 807 F.3d 1128, 1156 (9th Cir. 2015) (reversing a conviction for fraud and selling unregistered securities where the government failed to provide notice of expert testimony); *United States v. Freeman*, 730 F.3d 590, 599 (6th Cir. 2013) (vacating a conviction for murder-for-hire where the government's expert witness testified beyond the scope of the notice provided.)

### c. *Mr. Roberts's Opinion Testimony Violates Rule 701.*

Under Federal Rule of Evidence 701, a lay witness may offer testimony "rationally based on the witness's perception" but "not based on scientific, technical, or other specialized knowledge." This is "the familiar requirement of first-hand knowledge or observation." *See* Fed. R. Evid. 701 advisory committee's notes to 1972 proposed rules. But Mr. Roberts did not have first-hand knowledge of Mr. Weibel's appraisals. He testified that he did not assist Mr. Weibel with any of Mr. Weibel's appraisals and that he only did some research on the same properties, which he never finished. Trial Tr. Vol. 6 P.M., 42:13–25; 66:10–11. The government's question essentially conceded the lack of foundation for an informed opinion; it asked Mr. Roberts to offer an opinion based on his "experience with Mr. Fisher and Mr. Sinnott" rather than experience with Mr. Weibel. *Id*. at 66:12–13. Having not prepared Mr. Weibel's appraisals, assisted in their preparation, or even read them, Mr. Roberts had no basis to offer lay opinion testimony regarding the propriety of Mr. Weibel's appraisals.

### d. *The Court Should Declare a Mistrial Because the Prejudice to Mr. Weibel Cannot be Overcome by a Curative Instruction*.

Finally, the harm caused by the testimony requires its exclusion under Federal Rule of Evidence 403. Rule 403 states the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury . . . ." The

testimony has no probative value because Mr. Roberts did not appraise the properties at issue, had almost no interactions with Mr. Weibel, and did not review Mr. Weibel's appraisals. The testimony's prejudice to Mr. Weibel, on the other hand, is substantial, as is its potential to mislead the jury. After asking Mr. Roberts about his own inflated appraisals, for which he pleaded guilty, the government asked Mr. Roberts identical questions about appraisals that Mr. Weibel completed. Mr. Roberts's answer – that Mr. Weibel's appraisals would not stand on their own – as the grand conclusion of his testimony, invited the jury to conclude that Mr. Weibel's appraisals were comparable to the fraudulent appraisals for which Mr. Roberts was convicted, and that the jury should find Mr. Weibel guilty because Mr. Roberts admitted that his appraisals were fraudulent.

The purpose for which the government offered the inadmissible testimony was for the jury to draw a prohibited inference: that they should convict Mr. Weibel because Mr. Roberts testified that his appraisals were inflated. The Court should not allow such gamesmanship. Further, the prejudice to Mr. Weibel cannot be overcome by a curative instruction for the jury to disregard Mr. Roberts's opinion testimony regarding Mr. Weibel's appraisals. Accordingly, Mr. Weibel is entitled to a mistrial.

## II.   Precluding Mr. Weibel from Testing the Credibility of a Witness Against Him Entitles Him to a Mistrial.

On August 8, 2023, when Mr. Weibel's counsel was cross-examining IRS Special Agent Stehle, the Court, notwithstanding the absence of an outstanding

10

objection from the government, instructed counsel to confine himself to the scope of Agent Stehle's direct examination in testing his credibility. That instruction flies in the face of the plain text of Rule 611(b) of the Federal Rules of Evidence and Supreme Court precedent.

Among other documents, the government had introduced six different appraisals, unrelated to the appraisals at issue in this case, through Agent Stehle, who had previously testified that he had read all six of these appraisals in their entirety. Trial Tr. Vol. 16 P.M., 99:22. As counsel for Mr. Weibel was questioning Agent Stehle about his reading of these appraisals, and seeking to challenge his understanding of them, the Court ordered a bench conference.

At that bench conference, the Court made it clear that counsel would have to confine challenges to Agent Stehle's credibility so as to remain within the scope of the direct examination. "To attack his credibility by saying that he didn't do what an appraiser might do to get to the right number is not permissible, and I'm not going to allow it." Trial Tr. Vol. 17, 24:810. The Court issued that ruling even though only a few short minutes earlier, Agent Stehle had sought to justify his conclusions based on his asserted understanding of geological conditions. "I didn't think it would be possible for facts to change geologically that quickly." Trial Tr. Vol. 17,18:34. Ironically, the previous day, Agent Stehle had admitted that he lacked any formal training in geological sciences. Trial Tr. Vol. 16 P.M.,97:1719.

That Agent Stehle, while denying formal training in geological sciences, was nonetheless opining with respect to geological conditions should have ordinarily set him up for a perfectly legitimate challenge to his credibility.  Counsel for Mr. Weibel pointed that out at the bench conference.  "If he said he'd read the appraisal, he should know.  That -- that was an indication of changed facts."  Trial Tr. Vol. 17, 23:810.  The Court, however, firmly foreclosed all such challenges.

At the end of the bench conference, counsel for Mr. Weibel pointed out that Agent Stehle "is a witness against the accused.  My client has the absolute right to put him through the crucible of cross-examination."  Trial Tr. Vol. 17, 27:13–15. The phrase "crucible of cross-examination" is an unmistakable reference to the Sixth Amendment's Confrontation Clause.  *See Hemphill v. New York*, 142 S. Ct. 681, 691 (2022), *Williams v. Illinois*, 567 U.S. 50, 66 (2012), *Bullcoming v. New Mexico*, 564 U.S. 647, 661 (2011), *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 317 (2009), *Crawford*, 541 U.S. at 61.  Counsel's use of the phrase "crucible of cross-examination" should have been understood as invoking Mr. Weibel's Sixth Amendment confrontation right.  While agreeing with counsel that this right included attacking Agent Stehle's credibility, the Court nevertheless added, "[b]ut it's got to be within the scope of the direct examination, which you have exceeded." Trial Tr. Vol. 17, 27:18–19.

The Court's ruling to confine attacks to a government witness's credibility "to be within the scope of the direct examination" is clear error. The plain text of Federal Rule of Evidence 611(b) does not limit attacks on a witness's credibility to the scope of the direct examination. "Cross-examination should not go beyond the subject matter of the direct examination ***and*** matters affecting the witness's credibility." Fed. R. Evid. 611(b) (emphasis added). The Court effectively rewrote that rule, replacing the conjunctive "and" with a disjunctive "or," in ordering counsel not to go beyond the scope of Agent Stehle's direct examination while challenging his credibility on cross-examination. Such rewriting of an evidentiary rule is clear error.

The Court's ruling also ran afoul of the Sixth Amendment's Confrontation Clause. "It is well established that the right of confrontation guaranteed by the Sixth Amendment includes the right of cross-examination." *United States v. Jeri*, 869 F.3d 1247, 1262 (11th Cir. 2017) (quotation marks and alteration omitted). While "the scope of cross-examination is a matter within the discretion of the district court," the Eleventh Circuit has "repeatedly held" that such discretion "comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment." *United States v. Lindstrom*, 698 F.2d 1154, 1160 (11th Cir. 1983) (quotation marks omitted) (collecting cases). "One goal of effective cross-examination is to impeach the credibility of opposing witnesses." *Id*. By erroneously limiting challenges to Agent Stehle's credibility to the scope of

the direct examination, the Court hindered that goal and deprived Mr. Weibel of his

Sixth Amendment confrontation right.  Because no curative instruction can remedy

that error, the Court should declare a mistrial.

### III. Interrupting the Cross-Examination of a Witness Against Mr. Weibel and Proceeding to Ask that Witness Leading Questions from the Bench Entitles Mr. Weibel to a Mistrial

On August 14, 2023, when counsel for Mr. Weibel was cross-examining

another witness against Mr. Weibel, Gabriel Rodriguez, the Court interrupted that

cross-examination and then proceeded to ask a series of leading questions of its own.

In doing so, the Court violated Federal Rule of Evidence 611(c) and deprived Mr.

Weibel of a fair trial.

On direct examination, over objection, counsel for the government asked Mr.

Rodriguez whether "it was appropriate to provide the conservation easement

deduction to the appraisers that Mr. Fisher and Mr. Sinnott used?"  Trial Tr. Vol. 21

A.M., 135:23 – 136:22.  However, Mr. Rodriguez had not testified that Mr. Weibel

had been provided a conservation easement deduction.

While questioning Mr. Rodriguez about conversations that Mr. Weibel may

have had with a co-defendant, counsel asked the witness, "[a]nd there would be

nothing inappropriate about that, right?"  Trial Tr. Vol. 21 P.M., 63:9–11.  And even

as Mr. Rodriguez concurred with counsel, the Court interrupted the cross-

examination with the following admonishment: "[w]ell, ladies and gentlemen, again,

14

I just have to instruct you that this man is not an appraiser, he's not here to give an opinion as to the accuracy of the data that was provided to him that he then put into a spreadsheet or other document."  Trial Tr. Vol. 21 P.M., 63:16–20.

The Court then effectively paused counsel's cross-examination, and evidently seeking to rehabilitate the witness, asked him a series of leading questions in what amounted to a redirect examination, beginning by soliciting affirmation of the Court's reminder to the jury that the witness was not an appraiser: "[i]s that correct, sir?"  Trial Tr. Vol. 21 P.M., 63:21.  The following exchange ensued:

THE WITNESS: Correct.

THE COURT: All right. You did correctly follow your instructions and do what you were supposed to do, I presume; is that right?

THE WITNESS: Yes, sir.

THE COURT: Okay. But you don't have any personal knowledge as to whether the data, the figures that were provided to you, is accurate or not? That's not within your bailiwick, is it?

THE WITNESS: Correct.

THE COURT: Okay.

Trial Tr. Vol. 21 P.M., 63:22–64:7.

As a general proposition, leading questions are not allowed on direct (or redirect) examination of a witness.  Federal Rule of Evidence 611(c) provides that "[l]eading questions should not be used on direct examination [of a witness] except as [may be] necessary to develop the witness's testimony."  An advisory committee

15

note explains that "[t]he rule continues the traditional view that the suggestive powers of the leading question are as a general proposition undesirable." Fed. R. Evid. 611(c) advisory commmittee's notes to 1972 proposed rules.

"[A]lthough Federal Rule of Evidence 611(c) generally discourages the use of leading questions on direct [examination], it is not automatically improper for the prosecutor to ask such questions or for the district court to permit their use." *United States v. Fenner*, 600 F.3d 1014, 1022 (8th Cir. 2010). Federal courts have allowed exceptions to this general rule in a few narrow areas, holding leading questions on direct examination permissible for certain vulnerable witnesses. *See, e.g., United States v. Goodlow*, 105 F.3d 1203, 1207–08 (8th Cir. 1997) (mentally retarded adult); *United States v. Ajmal*, 67 F.3d 12, 15–16 (2d Cir. 1995) (foreign witness testifying through a translator); *United States v. Castro–Romero*, 964 F.2d 942, 943–44 (9th Cir. 1992) (child sexual abuse victim); *United States v. Grey Bear*, 883 F.2d 1382, 1393 (8th Cir. 1989) (unusually soft-spoken and frightened witness); *see also Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005) (collecting cases).

But the witness here, Mr. Rodriguez, does not fall into any of these categories of vulnerable witnesses. Moreover, there was no indication that leading questions were, in any way, "necessary to develop the witness's testimony." Fed. R. Evid. 611(c). To the contrary, the Court, sua sponte and without any objection from the government, and abandoning its role as a neutral decision maker, chose to ask such

16

leading questions. *Cf. Bird v. Regents of N.M. State Univ.*, 619 Fed. Appx. 733, 740 (10th Cir. 2015) (unpublished) (explaining that the district courts "have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it" (citation omitted)). Because such leading questions from the bench "amounted to, or contributed to, the denial of a fair trial," *Castro-Romero*, 964 F.2d at 943, and because the resulting prejudice to Mr. Weibel cannot be overcome by a curative instruction, he is entitled to a mistrial.

## CONCLUSION

For the foregoing reasons, Mr. Weibel respectfully moves the Court to declare a mistrial.

Respectfully Submitted,

/s/ Guinevere Moore
Guinevere M. Moore
Ajay Gupta
MOORE TAX LAW GROUP LLC
2205 W. Armitage Ave., Suite 1
Chicago, IL 60647
Telephone: 312-549-9993
guinevere.moore@mooretaxlawgroup.com
ajay.gupta@mooretaxlawgroup.com
ADMITTED PRO HAC VICE

Molly Hiland Parmer
Parmer Law
One Atlantic Center
1201 W. Peachtree Street NW, Suite 2300
Atlanta, GA 30309
Telephone: 404-795-5060
molly@parmer.law
GEORGIA BAR NO.: 942501
Counsel for Defendant Clay Weibel

Dated: This 15th day of August, 2023

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document is formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

/s/Guinevere Moore
_____

Guinevere M. Moore
ADMITTED PRO HAC VICE

Dated: This 15th day of August, 2023.