## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CLAY MICHAEL WEIBEL A/K/A<br>"CLAYTON WEIBEL,"<br><br>Defendant. | CASE NO.:<br>1:21-CR-00231-TCB-CMS-6 |

## MOTION AND MEMORANDUM OF LAW OF DEFENDANT CLAY WEIBEL FOR MISTRIAL

Defendant Clay Michael Weibel respectfully moves the Court to declare a mistrial because of the Court's erroneous decision on September 20, 2023, to dismiss Juror 26, who was known by the parties and the Court to be in favor of acquittal of the defendants.[1]

## I.   Any Potential Misconduct by Juror 26 Does Not Meet the Strict Standard for Dismissal

Just a day earlier, the Court correctly ruled in a written order that Juror 26 should be allowed to continue deliberations and that any potential misconduct by Juror 26 did not satisfy the demanding standard required in the Eleventh Circuit for

---

[1] The record is replete with information regarding the positions of individual jurors and the distribution of jurors in favor of conviction and acquittal. The Court should also declare a mistrial given the lack of secrecy around the jury's deliberations and how this information may affect the proceedings. A list of the juror's names referenced in this motion are filed as Exhibit A under seal.

dismissal of a juror. (Doc. 715 at 6–7.) The Eleventh Circuit has been very clear: "a juror should be excused only when no substantial possibility exists that she is basing her decision on the sufficiency of the evidence." *United States v. Brown*, 996 F.3d 1171, 1184 (11th Cir. 2021) (internal quotation marks omitted). Indeed, "reversal is warranted on an ambiguous record even when substantial evidence supports the conclusion that a dismissed juror was basing his decision on impermissible grounds." *Id.* at 1185. Courts must be especially cautious where, as here, it appears that the juror who might be dismissed is in a minority favoring acquittal. *See United States v. Abbell*, 271 F.3d 1286, 1302 (11th Cir. 2001) ("A risk exists, however, that ten or eleven members of a jury that have collectively reached agreement on a case's outcome may thereafter collectively agree that the one or two hold-outs—instead of honestly disagreeing about the merits—are actually refusing to apply the law as instructed by the court in an impermissible attempt to nullify the verdict."); *see also, e.g.*, *United States v. Brown*, 823 F.2d 591, 596 (D.C.C. 1987) ("[W]e must hold that if the record evidence discloses any possibility that the request to discharge stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request."). One of the problems recognized by the Eleventh Circuit, and other jurisdictions, is that jurors in the majority may be inclined to believe and tell the court that a holdout is

2

refusing to deliberate or is refusing to follow the law, when what is really happening is that the holdout honestly disagrees with the majority about the merits.

Here, assuming that there was some evidence Juror 26 might base her decision on "impermissible grounds," that evidence was ambiguous and insufficient to meet the standard for dismissal. The Court simply did not have the necessary basis to dismiss Juror 26 for suspected misconduct. As the *Brown* court explained:

> In each of our decisions approving the dismissal of a dissenting juror, the district judge received unambiguous information from the juror herself about her unwillingness or inability to follow the law, *see United States v. Geffrard*, 87 F.3d 448, 451, 453–54 (11th Cir. 1996); credible complaints of misconduct corroborated by all of the other jurors, *see United States v. Godwin*, 765 F.3d 1306, 1315 (11th Cir. 2014); [*Abbell*, 271 F.3d at 1303–04 & n.18]; or a combination of both, *see United States v. Oscar*, 877 F.3d 1270, 1285–86 (11th Cir. 2017); *United States v. Augustin*, 661 F.3d 1105, 1129–32 (11th Cir. 2011).

*Brown*, 996 F.3d at 1186.

Neither of those conditions was met for Juror 26's dismissal. Far from there being "unambiguous information from the juror herself about her unwillingness or inability to follow the law," Juror 26 told the Court that she was deliberating according to the Court's instructions. As for the "misconduct corroborated by all of the other jurors" condition, the Court only performed *voir dire* of a minority of the jurors, and their statements reflected at least a "substantial possibility" that Juror 26

was properly deliberating.  For instance, the Court asked the Foreperson, Juror 57,
"Is she refusing to deliberate or is she simply firmly convinced in her opinion on
guilt or innocence?" and Juror 57 responded, "Both. She is refusing, but, I would
say both."  Trial Tr. Vol. 43, 45:20–23.  Similarly, Juror 8 said, "But I think after
our conversation today, [Juror 26] might be" willing to deliberate. Trial Tr. Vol. 42
A.M., 72:2–3.  The fact that the jury later informed the Court it had reached a
unanimous verdict on eight or nine of the counts corroborates that Juror 26 was
participating in deliberations.  Even the Court itself acknowledged that "I don't think
[Juror 26 is] deliberating anymore.  But I don't know whether she is or not.  And I
can't presume that she is not.  I don't -- there's no way for me to know."  Trial Tr.
Vol. 44 A.M., 19:10–12.  That statement indicates that the Court's primary reason
for dismissing Juror 26 was, rather than because of an alleged refusal to deliberate,
because of a statement she made referring to race.  As discussed below, Juror 26
should not have been dismissed on this basis.

## II.      There Was Insufficient Evidence of Racial Bias to Dismiss Juror 26

The primary reason the Court gave for dismissing Juror 26 was alleged
racial bias, allegedly reflected by a statement she made during *in camera voir dire*
before the Court.  Juror 26 said, while referring to other jurors, "So I do feel like—
I'm not necessarily being discriminated against.  But I am a white person standing
up for white people."  Trial Tr. Vol. 42 A.M., 80:15–17.

Immediately after performing that *voir* dire, the Court did not appear particularly concerned about this statement.  In giving a summary to counsel of the Court's *voir dire* of Juror 26 and two other jurors, the Court did not mention it before stating "I do not believe that [Juror 26] should be removed for good cause. I feel that the defendants' rights to have 12 jurors free to deliberate is crucial." *Id.* at 83:23–25.  Only later, upon pressure from the government, did the Court begin to see Juror 26's statement as evidence of racial bias that might warrant dismissal.

But the government was desperate to have Juror 26 dismissed even before she ever made any race-based statements.  On the night of Sunday September 17, 2023, the government filed a 38-page motion to have her dismissed.  When the government learned of Juror 26's allegedly racist comment, the government latched onto it and added it to a kitchen-sink list of alleged misconduct by Juror 26. The real reason the government so frantically sought her dismissal is obvious: the government knows that Juror 26 favored acquittal.

Weibel is unaware of any decision dismissing a juror on the basis of an unexplored and disputed statement that was allegedly racist, and the cases cited by the government are not on point and do not support dismissal of Juror 26.  In *Pena-Rodriguez v. Colorado*, the Supreme Court held that "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule

give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." 580 U.S. 206, 225 (2017). *Pena-Rodriguez* does not support the removal of Juror 26, for several important reasons.

First, Juror 26 did ***not*** make a "clear statement" of racial animus. The government assumed, and encouraged the Court to assume, the most damning possible interpretation of Juror 26's statement, namely that Juror 26 meant "I'm here to protect the [white] people." Trial Tr. Vol. 43, 28:12. But there are other interpretations of Juror 26's statement that are more plausible, given how unlikely it is that Juror 26 would spontaneously confess to racial bias while assuring the Court that she was following the Court's instructions in deliberations. Juror 26 most likely was referring to how she felt that some of the Black jurors perceived her. That is, she likely meant something to the effect of "I believe the other jurors are against me because of my race and because I'm willing to question the evidence against white defendants." In other words, it is not at all clear that Juror 26 meant she was standing up for the defendants ***because*** they are white rather than she merely presented arguments in favor of defendants who happen to be white. Even the government implicitly admitted that Juror 26's statement could be construed multiple ways. *See* Trial Tr. Vol. 43, 18:16 ("That's what that *can be read to mean*." (emphasis added)).

The Supreme Court held in *Pena Rodriguez* "[n]ot every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry." 580 U.S. at 225. Here, even assuming Juror 26's comment did indicate some racial bias, the Court simply assumed the government's self-serving interpretation was correct without conducting any further inquiry. The Court never asked Juror 26 to explain her statement, nor did the Court ask the other jurors if they believed Juror 26 was impermissibly basing her decision on race. And further inquiry is what would be required under *Abbell/Brown* to dismiss Juror 26, or under *Pena-Rodriguez* to challenge a guilty verdict.

The hypothetical appeal of a guilty verdict in this case raises another problem with the government's position. Assuming that "racial stereotypes" figured into Juror 26's thinking, it was to ***acquit*** criminal defendants. The rule announced in *Pena-Rodriguez* is similar to the special solicitude that the Eleventh Circuit and other courts give to jurors who may be holdouts unconvinced by the sufficiency of the government's evidence. In the other case the government cited, *United States v. Maurival*, the Eleventh Circuit denied a defendant's motion to overturn his conviction based on allegedly racist statements by jurors. 861 F. App'x 388 (11th Cir. 2021). After explaining how one statement that may have appeared racist actually was "not ethnically or racially based," the Eleventh Circuit

also noted the distinction between allegedly racist statements that would favor the defense, as opposed to the government. *See id.* at 393–94 ("We note that this statement could have been about the government witnesses (the clients) who needed interpreters, and not about Mr. Maurival, who spoke English.").  The Sixth Amendment protects the right of criminal defendants to be convicted only by a unanimous jury.  The Constitution does not protect any "right" of the government to obtain a conviction of a defendant, who must be presumed innocent until proven guilty.  The government has no right to appeal an acquittal.  Certainly there is no right of the government to have pro-defendant jurors dismissed from deliberations based on self-serving interpretations of ambiguous remarks.  The government here, however, has shown itself to be all too happy to conflate different allegations of racial bias in trying to get a pro-defendant juror dismissed.[2]

In sum, the constitutional right actually at stake here is Weibel's right to not be convicted of a crime by a less than unanimous jury of his peers.  Because the Court erroneously dismissed Juror 26, any conviction of Weibel would require reversal under *Abbell*, *Brown*, and other binding precedent.

---

[2] The government simultaneously argued that they knew Juror 26's allegations of racial bias against another juror were false and also that these allegations must be further investigated by the Court lest a potential guilty verdict be tainted by racial bias.  The government's transparent goal in these conflicting positions was to have Juror 26 dismissed for being untruthful.

**Conclusion**

For the foregoing reasons, Mr. Weibel respectfully moves the Court to declare a mistrial.

Respectfully Submitted,

/s/Guinevere M. Moore

Guinevere M. Moore
Ajay Gupta
MOORE TAX LAW GROUP LLC
2205 W. Armitage Ave., Suite 1
Chicago, IL 60647
Telephone: 312-549-9993
guinevere.moore@mooretaxlawgroup.com
ajay.gupta@mooretaxlawgroup.com
ADMITTED PRO HAC VICE

Molly Hiland Parmer
Parmer Law
One Atlantic Center
1201 W. Peachtree Street NW, Suite 2300
Atlanta, GA 30309
Telephone: 404-795-5060
molly@parmer.law
GEORGIA BAR NO.: 942501
Counsel for Defendant Clay Weibel

Dated: This 21st day of September, 2023.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document is formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

/s/Guinevere M. Moore
Guinevere M. Moore
ADMITTED PRO HAC VICE

Dated: This 21st day of September, 2023.