IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JACK FISHER,<br><br>Defendant. | CASE NO.:<br>1:21-CR-00231-TCB-CMS |

**MOTION TO REMOVE FIVE ADDITIONAL JURORS FOR GOOD CAUSE, OR, IN THE ALTERNATIVE, FOR A MISTRIAL**

Defendant Jack Fisher hereby requests that the Court remove five jurors for good cause pursuant to Fed. R. Crim. P. 23(b).

## INTRODUCTION

The impartiality of the jury has been in dangerous territory for nearly the entirety of deliberations. Nevertheless, the Court allowed deliberations to go forward for five days before removing Juror #26 for cause. Under the reasoning of the Court's decision to remove this juror, over objection, in the midst of promising deliberations and to replace her with an alternate juror over defendants' objections, there are five other jurors who should be removed for good cause at this time. To be clear, Mr. Fisher persists in his objections to the reasoning of the Court, but because it is now the law of this case, Mr. Fisher respectfully submits it should be

1

applied equally to all deliberating jurors.

## BACKGROUND

Although the standard to replace a juror during deliberations is exceedingly high,[1] and perhaps an inappropriate procedure altogether in this case,[2] the Court removed Juror #26 based on concern related to a comment (in response to *in camera* voir dire) the Court interpreted to infer possible race-based bias in deliberations. On its face, the colloquy with Juror #26 confirms a well-informed understanding of the role of the juror and contradicts the suggestion of race-based deliberation:

> THE COURT: Okay. **Do you feel you've been discriminated against?**
> JUROR #26: No.
> THE COURT: Okay. Did you ever say anything in the jury room to the effect that you didn't want to put these old men in jail for the rest of their lives?
> JUROR #26: **No. But what I did say was it's not our job to base their fate on their age or their financial status or any of that.** It's -- we are to base this on the evidence that has been provided to us. And we have to go through these things and determine our opinion of this evidence. Comments have been made prior to deliberation. And this is probably where it's not going to be good for me to say this. **But comments have**

---

[1] *See, e.g., United States v. Brown*, 996 F.3d 1171, 1185 (11th Cir. 2021) (en banc); *United States v. Abbell*, 271 F.3d 1286, 1302-04 (11th Cir. 2001); *United States v. Thomas*, 116 F.3d 606, 624-25 (2d Cir. 1997); *United States v. Brown*, 823 F.2d 591, 596 (D.C. Cir. 1987).

[2] *See, e.g., United States v. Guevara*, 823 F.2d 446, 448 (11th Cir. 1987) (declining to authorize any routine deviation from the strictures of Fed. R. Crim. P. 24(c) and recognizing only narrow exception cases where, in any event, "extraordinary precautions" must be followed).

>**been made prior to this deliberation that they were going to find them guilty because they were white, rich, and entitled.** And in my opinion, that is not a reason for them to be found guilty. They should be looking at the facts in the case, not worrying about those things. So I don't think that it matters the color of their skin or their financial status or how entitled they think they are. I don't think those things matter because that's not what's the issue at this case. **So I do feel like -- I'm not necessarily being discriminated against. But I am a white person standing up for white people. And they already have their opinions on that.** And it's been spoken in the jury room, not during deliberations, but prior to. So in a sense, I feel like they are -- they want to push my -- sway my decision. But I haven't come up to a decision yet.

(Trial Tr. Vol. 42 (AM), 79:15-80:22) (emphases added).  Nevertheless, the Court would ultimately label the "I am a white person standing up for white people" observation as "hideous" and "abhorrent" en route to removing Juror #26.  (Trial Tr. Vol. 43 (PM), 19:25-20:17).

Of course, the entire context for Juror #26's comments were the race-based comments by other jurors suggesting the Defendants should be convicted for being "rich, white, and entitled." The fact that the believed participants[3] deny involvement in the conversation at issue should not end the inquiry.  There is simply no reason to

---

[3] When questioned about the participants in this conversation, Juror #26 explained, "I'm not positive that I know who said it."  (Trial Tr. Vol. 42 (AM), 95:8-9).  Then, after more prodding, she explained, "I believe it was [Juror #44], the guy that cussed me." (*Id.*, 95:21-22).  "It was him.  And the people that were in the conversation that I can remember were [Juror #33]…and…[Juror #40]…" (*Id.*, 95:21-96:13).

believe Juror #26, unprompted, would concoct this story whole-cloth out of thin air. However, rather than investigating further to understand the extent of the taint and the credibility of the denials, the Court took the word of these defendants at face value and declined counsel's invitation to make a complete evidentiary record.

This course of action is particularly troubling where the Court's limited evaluation of Juror #26's statements (explaining her concerns and explicitly denouncing a race-based motive in her own deliberations) nevertheless led to her removal. Needless to say, the Court should apply the same skepticism and investigate whether the "rich, white, and entitled" comments or any apparent bias have been observed by any other members of the jury *en route* to a more fulsome assessment of the credibility of all implicated jurors.

## ARGUMENT

**I.   The Court should remove the following 5 jurors for good cause.**

**Juror #44** is at the epicenter of the events that led to the removal of Juror #26. In fact, prior to any of the statements by Juror #26 above, Juror #44 verbally assaulted Juror #26 in the middle of deliberations. While the exact circumstances are unknown, it is undisputed that he used profane and threatening language including "Fuck you" or "Fuck off" in an altercation of some sort that reduced Juror #26 to tears and temporarily stalled deliberations. (Trial Tr. Vol. 41 (AM), 43:24-

4

44:3); (Trial Tr. Vol. 41 (PM), 6:21-7:2). Remarkably, the government attempted to pass off this encounter as no big deal. (Trial Tr. Vol. 42 (AM), 51:7-14).[4] But as the Court has already observed, "That right there may well be sufficient grounds to discharge him." (Trial Tr. Vol. 41 (PM), 20:9-10).

Without further investigation, the Court gave an instruction to the jury that name-calling or profanity would not be tolerated and would punished by criminal contempt. (Trial Tr. Vol. 41 (AM), 45:14-46:11). After the instruction, Juror #44 continued his threatening behavior with a pronouncement to the entire room, "so this is how it's going to be…[t]his is what we're doing…" (Trial Tr. Vol. 42(AM), 78:3-15). By multiple accounts, this defiant conduct in violation of the clear spirit of the Court's special instruction resulted in another critical stall in deliberations on Friday, September 15, 2023. (*Id.*, 78:16-25) (Juror #26 explanation); (*Id.*, 68:15-69:14) (Juror #8 explanation). Later that evening, jurors contacted Court staff directly regarding their deliberations. (Doc. No. 708 at 2-3). Jurors also discussed among themselves the status of deliberations.

Juror #44 also allegedly made race-based statements, prior to beginning

---

[4] THE COURT: I' [sic] trying to think of a sanguine way to say fuck you.
MR. ROLWING: Fuck you. I do it all the time. Fuck that. Get the fuck out of here. Fuck off. Fuck off. You could say it all sorts of ways. You could say it all sorts of ways, with the inflection, and it can be -- have a different meaning. It's the most versatile word in the English language, I submit.

deliberations, that he intended to convict the defendants, who are white males, because they are "white, rich, and entitled." (Trial Tr. Vol. 42 (AM), 80:5-10; 96:19-23). As with the earlier conduct, the Court recognized the serious nature of the allegation and the need to fully investigate:

> Well, while I agree largely with that, the suggestion is too disturbing to dismiss out of hand without voir diring the jurors. So I'd like to bring in the jurors one at a time, starting with the -- whatever the lowest number person is on the jury. In other words, not starting with the foreperson. And I'm simply going to ask each juror whether there were any discussions before deliberations to the effect that the defendants are white, entitled and privileged or what was it?

(*Id.*, 91:3-12). However, that investigation contemplated by the Court never took place (though, Mr. Fisher submits it should still occur).

Nonetheless, at the time, the Court seemed inclined to dismiss Juror #44 alongside Juror #26. (Trial Tr. Vol. 42 (AM) 114:25-115:2) ("THE COURT: So my inclination at this point is to grant the government's motion to dismiss [Juror #26] and grant Defendant Weibel's motion to dismiss [Juror #44]."). However, at that time, the Court decided to dismiss neither juror.

**Juror #40** is believed to have been involved in the conversation(s) overheard by at least one juror impermissibly suggesting that defendants should be convicted because they are "white, rich, and entitled." (*Id.*, 96:5-12). Juror #40 denied

6

involvement. (*Id.*, 111:1-19). But this investigation was woefully insufficient under the Court's own proposed standard. (*Id.*, 91:3-20).[5] If further investigation reveals that this juror was involved in the conversation or heard the conversation and lied to the Court, then this juror should be removed for cause.

**Juror #33** – like Juror # 40 – is believed to have been involved in the "white, rich, and entitled" discussion. (*Id.*, 95:25-96:12). Juror #33 also denied involvement. (*Id.*, 109:10-110-7). Again, the investigation was insufficient, and if further investigation reveals that this juror was involved in the conversation or heard the conversation and lied to the Court, then this juror should be removed for cause.

The remaining 2 jurors at issue have engaged in continued impermissible contact with the Court in violation of explicit instructions from the Court. The Court cited failure to follow instructions from the Court as one of the reasons to scrutinize

---

[5] THE COURT: Well, while I agree largely with that, the suggestion is too disturbing to dismiss out of hand without voir diring the jurors. So I'd like to bring in the jurors one at a time, starting with the -- whatever the lowest number person is on the jury. In other words, not starting with the foreperson. And I'm simply going to ask each juror whether there were any discussions before deliberations to the effect that the defendants are white, entitled and privileged or what was it?
MR. SAMUEL: And guilty.
MR. ROLWING: No.
THE COURT: I don't think so.
MR. ROLWING: That they would find them guilty.
MR. SAMUEL: They would find them guilty because they were --
MR. ROLWING: Rich, white and entitled is what she read.

Juror #26. Accordingly, applying the rule of the case, Juror #57 and Juror #8 should likewise be removed for failure to follow the Court's instructions.

**Juror #57** is the foreperson. Her impermissible communications with Court staff, in large part, were the impetus for the initial investigation into Juror #26 for allegedly "refusing to deliberate." (Doc. No. 708 at 2-3). Juror #57 also called another juror to discuss deliberations after Court one day. Even after Juror #57 impermissibly telephoned the Court and another juror, Juror #57 continued to text with Court staff. Indeed, the Court clerk was receiving texts from Juror #57, while the juror was in the jury deliberation room, during a hearing outside the presence of the jury on this matter.

However, the clear record establishes that Juror #26 (and the rest of the jurors) were, in fact, deliberating. For example, on Friday morning, a juror reported that deliberations were "hopelessly hung." (Trial Tr. Vol. 41 (AM), 29:11-30:5). When Juror #57 was asked by the Court about this on Friday afternoon, she reported a unanimous verdict on one or two counts. (Trial Tr. Vol. 41 (PM), 8:4-10). By the time Juror #57 was asked on Tuesday morning, she reported a unanimous verdict on 8 or 9 counts. (Trial Tr. Vol. 43 (PM), 44:10-16). Nevertheless, Juror #57 again reported to the Court that Juror #26 was refusing to deliberate, (Trial Tr. Vol. 43 (PM), 45:20-23), and had specifically asked the Court to bring in an alternate to

break the deadlock. (Trial Tr. Vol. 41 (PM), 8:17-23). In fact, Juror #26 had not refused to deliberate—otherwise it would have been impossible to reach verdict on any counts, much less eight or nine counts. On the contrary, the evidence, and this Court's own finding, show she was actively deliberating. (Trial Tr. Vol. 44 (AM), 3:7-12). Moreover, another juror confirmed she requested evidence to review. (Trial Tr. Vol. 42 (AM), 65:20-66:2).

Thus, it appears Juror #57 made misrepresentations to the Court on several prior occasions in a deliberate effort to have Juror #26 removed and hoping to speed up deliberations or advance her own personal agenda in the case. All of this is plainly improper and should result in her dismissal.

**Juror #8**, like Juror #57, engaged in various impermissible communications with the Court that resulted in the Court's ultimate removal of Juror #26. To the extent failure to follow the Court's instruction was cited as a basis for the removal of Juror #26, the same rule should be applied to Juror #8. Likewise, Juror #8 admits that she too left the deliberation room. (*Id.*, 67:9-68:14). In fact, it appears she left the deliberation room before Juror #26 did. (*Id.*, 68:18-25). Thus, to the extent leaving the deliberation room was cited as a basis for the removal of Juror #26, the same rule should be applied to Juror #8.

## II.   In the alternative, the Court should declare a mistrial.

After this much has transpired, it is impossible to cure the prejudicial effects of all the events described above in and in the broader record. Rather than fully investigating at this juncture, the Court should declare a mistrial, which is the likely result of the necessary investigation in any event.

## CONCLUSION

For the reasons stated herein, the Court should fully investigate all of the apparent juror misconduct that taints the deliberations in this case, or, in the alternative, declare a mistrial.

Respectfully submitted this the 21st day of September, 2023,

/s/ *Brett A. Switzer*
Brett A. Switzer
GA Bar No. 554141
Brett.Switzer@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
271 17th Street, NW, Suite 2400
Atlanta, Georgia 30363-1017
Tel: (404) 872-7000

Russ Ferguson* (N.C. Bar No. 39671)
Russ.Ferguson@wbd-us.com
Claire J. Rauscher*  (N.C. Bar No. 21500)
Claire.Rauscher@wbd-us.com
Michael A. Ingersoll* (N.C. Bar No. 52217)
Mike.Ingersoll@wbd-us.com
301 S. College Street, Suite 3500
Charlotte, NC 28202

Tel: (704) 331-4920

Luke Cass* (DC Bar No. 491706)
Luke.Cass@wbd-us.com
2001 K Street, NW
Suite 400 South
Washington, DC 20006
Tel: (202) 857-4426

M. Rhett DeHart*
5 Exchange St
Charleston, SC 29401
Tel: (843) 722-3400
Email: Rhett.DeHart@wbd-us.com

*  *Admitted Pro Hac Vice*
*Attorneys for Defendant Jack Fisher*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing complies with the font and point selections approved by the court pursuant to L.R. 5.1B and 7.1D of the Northern District of Georgia. The foregoing filing was prepared on a computer using 14-point Times New Roman font.

This 21st day of September, 2023,

 /s/ Brett A. Switzer
Brett A. Switzer
GA Bar No. 554141

*Attorney for Defendant Jack Fisher*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing filing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

This 21st day of September, 2023,

                                        /s/ Brett A. Switzer
                                        Brett A. Switzer
                                        GA Bar No. 554141

                                        *Attorney for Defendant Jack Fisher*