IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JACK FISHER; JAMES SINNOTT; and CLAY MICHAEL WEIBEL,<br><br>    Defendants. | CRIMINAL ACTION FILE<br><br>NO. 1:21-cr-231-TCB |

**O R D E R**

This case comes before the Court on Defendant Clay Weibel's motion [724] for a mistrial. Defendants Jack Fisher and James Sinnott move [727 & 730] to adopt Weibel's motion.

Defendants' motion focuses upon the Court's removal of Juror 26. The Court will first explain the background behind this decision before addressing Defendants' arguments.

As the Court has explained, the standard for the removal of a juror after deliberations have begun is high. *See United States v. Brown*, 996 F.3d 1171 (11th Cir. 2021) (en banc). The Court is fully

aware that dismissing a juror—particularly one who apparently is inclined to vote for acquittal—is extraordinary. Only in rare circumstances might such an option even be considered. This is precisely why the Court proceeded with extreme caution and utmost care in considering the removal of Juror 26, and originally opted against dismissing her.

Juror 26—in an *in camera* interview with the Court—stated that she is a "*white person standing up for white people.*" Trial Tr. Vol. 42 (AM) 80:16-17.  That statement abhorrently ties together Juror 26's deliberations with the race of the Defendants. No amount of after-the-fact massaging of this language can render it innocuous.

The Court also found Juror 26 not credible and, indeed, untruthful. She falsely accused three Black jurors of engaging in race-based commentary about the Defendants. After interviewing all three jurors allegedly involved in the conversation, the Court found that this statement was not in fact made and that Juror 26 was untruthful in making this allegation.

But what cannot be untruthful is Juror 26's own statement—perhaps better termed an "admission"—to the Court. This was

unambiguous evidence of race-based deliberations from the juror herself. The evidence here was clear. Juror 26 based her deliberations on the Defendants' race.

Weibel suggests that the Court was not initially concerned about Juror 26's comments. Not so. True, the Court at first refused to declare a mistrial or replace Juror 26 after this *nine-week* trial had finally proceeded to deliberations. But Juror 26's unambiguous statement was shocking, and over time it weighed increasingly heavy on the Court. With each passing hour, the Court experienced more angst over having allowed an apparently racist juror to remain among the venire. By Wednesday morning (September 20), the Court changed its mind and concluded that removing Juror 26 was the only way to preserve the sanctity of this trial, regardless of whether the juror was inclined to vote for acquittal. The Court has no second thoughts about this decision.

Defendants argue removing Juror 26 was error. Weibel points to case law discussing why removal of a holdout juror is improper because "jurors in the majority may be inclined to believe and tell the court that a holdout is refusing to deliberate or is refusing to follow the law, when

what is really happening is that the holdout honestly disagrees with the majority about the merits." [724] at 2–3.

This argument is misplaced. As the Court made clear on the record, the Court's removal of Juror 26 was not based upon previous claims that she refused to deliberate.

Weibel next argues that removal of Juror 26 due to her statement that she was a "white person standing up for white people" was improper. He first describes this comment as "an unexplored and disputed statement that was allegedly racist . . . ." *Id.* at 5. Each modifier—"unexplored," "disputed," and "allegedly"—lacks any foundation in the record. Juror 26 made the statement *to the Court*; describing the statement as "unexplored" or "disputed" is disingenuous.

Indeed, the Eleventh Circuit said in *Brown*, when discussing dismissing a juror for a refusal to deliberate, that in "each of our decisions approving the dismissal of a dissenting juror, the district judge received *unambiguous information from the juror herself. . . .*" 996 F.3d at 1186 (emphasis added). Similarly in this case, the Court received "unambiguous information" from Juror 26 indicating that she based her deliberations on an impermissible ground.

4

Further, as the Court explained, the comment is not "allegedly" a race-based comment. A rose is a rose is a rose. And a juror telling a federal district judge that she feels like she's a "white person standing up for white people" ultimately can be interpreted only one way. Indeed, the Court has searched in vain for an anodyne construction of these words.

In his motion to adopt, Sinnott complains that the Court has found "every part of the juror's" interview "false, with the sole exception of the sentence 'I am a white person standing up for white people.'" [730] at 2. That is correct. And a review of the context of the Court's *in camera* interview reveals why.[1]

The Court first confronted Juror 26 about reports that when deciding guilt or innocence, she said words to the effect that she could not "put some old men in jail for the rest of their lives." Although Juror

---

[1] At times, Defendants have objected to the Court's decision to voir dire the jurors in chambers instead of in the courtroom. But according to a treatise authored by Sinnott's counsel, this is a permitted practice in the Eleventh Circuit. *See* DONALD F. SAMUEL, ELEVENTH CIRCUIT CRIMINAL HANDBOOK § 272 (Matthew Bender, 2023 Ed.) ("Occasionally, it may appropriate for a judge to question a juror in camera if there is a basis for removing the juror. In such situations a transcript should be made of the communication.") As the Court previously stated, it was convinced that chambers offered a less intimidating environment and was more likely to facilitate discovery of the truth. And the Court was right. The Court is skeptical that Juror 26 would have been so candid in the courtroom.

26 said that she "[didn't] even remember who said it," Trial Tr. Vol. 42 (AM) 96:25, at least one other juror (the foreperson) said that Juror 26 was the one who made the statement. *Id.* at 60:10-22. The Court credited the foreperson's statement as true. Juror 26 went further and said that *she* told the *other* jurors that "it's not our job to base their fate on their age or their financial status or any of that." *Id.* at 79:21-23. The Court found her denial and purported admonition of the venire to be manifestly false.

Confronted with questions about her impermissible consideration of the Defendants' age, Juror 26 dovetailed into falsely accusing a Black juror of making a statement about the Defendants' race and class.

Juror 26 explained that "[t]hey should be looking at the facts in the case" but ultimately that she is a "white person standing up for white people." *Id.* at 80:8-9, 16-17.

So, yes, the Court acknowledges that Juror 26 was truthful when she admitted that she viewed the parties through a tainted lens, but that she was mendacious when she denied having made the comment about refusing to convict the Defendants because of their age, and that she lied when accusing a Black juror of making other statements about

6

the Defendants. After all, Juror 26's statement is in the nature of an admission against interest. Nobody *falsely* declares that they *have* racist leanings.

Weibel next argues that two cases cited by the Government in support of Juror 26's removal fail to apply in this case. *See Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017); *United States v. Maurival*, 861 F. App'x 388 (11th Cir. 2021) (per curiam).

But in *Pena-Rodriguez*, the Supreme Court made clear that judicial inquiry is proper where "one or more jurors made statements exhibiting overt racial bias that cast serious doubt on the fairness and impartiality of the jury's deliberations. To qualify, the statement must tend to show that racial animus was a significant motivating favor in the juror's vote to convict." 580 U.S. at 225–26. *See also Maurival*, 861 F. App'x at 394 (describing how racial bias is "among the gravest of improper bases for a jury's decision").

Juror 26's statement falls cleanly within *Pena-Rodriguez*'s holding that a statement must exhibit "overt racial bias" indicating that race is "a significant motivating factor" in the juror's decisionmaking.

Despite this, Weibel takes the position that *Pena-Rodriguez* and *Maurival* stand for the proposition that "there is no right of the [G]overnment to have pro-defendant jurors dismissed from deliberations based on self-serving interpretations of ambiguous remarks." [724] at 8. This argument is based upon the fact that *Pena-Rodriguez* and *Maurival* dealt with a *conviction* based upon allegations of racial animus.

The logic of this argument lacks any consistency. Suppose (as the Court has found here) that a juror made her decision based upon a defendant's race. It follows that the juror should be removed no matter the circumstances. Yet Weibel wants the Court to draw a new line in the sand by declaring that a juror placing her vote based on race should not be removed if that vote is for acquittal. The Court will not do so.

For the foregoing reasons, Fisher and Sinnott's motions [727 & 730] to adopt Weibel's motion are GRANTED and Weibel's motion [724] for mistrial is DENIED.

IT IS SO ORDERED this 22nd day of September, 2023.

_____
Timothy C. Batten, Sr.
Chief United States District Judge